# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| RUSLAN NURIYEV,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 5:25-cv-06123-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Re: ECF No. 20] |

Plaintiff Ruslan Nuriyev filed a complaint in the Santa Clara County Superior Court asserting various federal and state law claims against Defendants Uber Technologies, Inc. ("Uber") and Checkr, Inc. ("Checkr"); Defendants removed the action to the U.S. District Court for the Northern District of California. ECF 1. Defendants filed a motion to compel arbitration. ECF 20 ("Mot."). Mr. Nuriyev filed an opposing brief, and Uber filed a reply. *See* Pl.'s Opp. ("Opp."), ECF 24; Defs.' Reply, ECF 26 ("Reply"). On September 9, 2025, the Court denied Mr. Nuriyev's Motion for Leave to File a Sur-Reply. ECF 31. The Court finds this motion suitable for resolution without oral argument and VACATES the hearing set for October 20, 2025. *See* Civ. L.R. 7-1(b).

The Court GRANTS the motion and STAYS the action pending completion of arbitration.

**I.   BACKGROUND**

Mr. Nuriyev signed up to use the Uber platform twice, once on January 21, 2024, and again on February 16, 2024. *See* Declaration of Anny Liao ("Liao Decl.") ¶¶ 11, 13. On both occasions, he accepted a Platform Access Agreement ("PAA") by logging into his newly created Driver account with a unique username and unique password. *Id.* ¶¶ 12–13. During the signup process, Uber's Driver App presents prospective drivers with a message stating "Please review

and agree to the documents below," along with a hyperlink to the PAA. Id. ¶ 9. To advance past the screen that contains the hyperlink, the prospective driver must click "YES, I AGREE," after which the prospective driver is prompted to confirm acceptance of the agreement a second time. *Id.* An electronic record was automatically generated on both occasions that Mr. Nuriyev signed up for the Uber platform. *Id.* ¶ 14, Exs. 4–5. The PAA contains an Arbitration Provision, which provides as follows:

   (a) This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and evidences a transaction involving commerce[.] . . . Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your relationship with us or . . . or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

   (b) This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial. . . . [S]uch disputes include without limitation disputes arising out of or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration provision.

   (c) Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individual, arising out of or related to your application for and use of an account to use our Platform and Driver App . . . background checks, your privacy, your contractual relationship with us or the termination of that relationship (including postrelationship defamation . . .) . . . unfair competition . . . discrimination . . . and claims arising under the . . . Fair Credit Reporting Act . . . and all other federal, state or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with use or the termination of that relationship.

1   ECF 20-1 Ex. 3 ("PAA"), § 13.1.  The PAA that Mr. Nuriyev twice accepted provides that, to opt
2   out of the arbitration provision, he had to send an email to a designated email address within
3   30 days.  Id. § 13.8(a); Liao Decl. ¶¶ 15–16.

4   After signing up as a driver and submitting the required documentation, Mr. Nuriyev was
5   denied access by Uber, which stated that he had used a falsified Social Security Number.
6   ECF 1.1, Ex. A ("Compl.") ¶¶ 5–7.  An Uber employee informed Mr. Nuriyev that Checkr, a
7   background check provider, had canceled his background check because of an invalid Social
8   Security number.  Id. ¶ 8.  Uber's platform continues to display Mr. Nuriyev's status as "fake
9   SSN" and "criminal background check failed."  Id. ¶ 12.  On June 18, 2025, Mr. Nuriyev filed a
10  complaint against Defendants in Santa Clara County Superior Court, alleging (1) violation of the
11  Fair Credit Reporting Act, (2) defamation, (3) negligent infliction of emotional distress,
12  (4) violation of the California Consumer Privacy Act, (5) unfair business practices in violation of
13  Cal. Bus. & Prof. Code § 17200, and (6) discrimination based on immigration status.  ECF 1-1,
14  Ex. A ("Compl.").

15  Uber removed the matter to federal court.  ECF 1.  Defendants move to compel arbitration,
16  contending that Mr. Nuriyev entered into an agreement to arbitrate any dispute with Uber arising
17  out of his attempt to use Uber's platform as a driver and that this arbitration agreement extends by
18  its terms to Checkr.  Mot. at 1.

19  **II.   LEGAL STANDARD**

20  Enforceability of an arbitration clause, and the determination of the scope of that clause, is
21  governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  Under the FAA, arbitration
22  agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon
23  such grounds as exist at law or in equity for the revocation of any contract."  Id. § 2.  Such
24  generally applicable contract defenses include "fraud, duress, or unconscionability, but not . . .
25  defenses that apply only to arbitration or that derive their meaning from the fact that an agreement
26  to arbitrate is at issue."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal
27  quotation marks and citation omitted).  A party seeking to invoke an arbitration agreement may
28  petition the district court "which, save for such an agreement, would have jurisdiction [to hear the

3

case], for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012). A district court does not consider challenges to the contract as a whole but rather specific challenges to the validity of the arbitration clause itself. *See Rent–A–Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). When determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999).

A court typically determines two "gateway" issues on a motion to compel arbitration: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). There is an exception, however, where "the parties clearly and unmistakably provide otherwise." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In such a case, the court is limited to deciding the first issue. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019). If an arbitration agreement exists, the court examines it to determine whether the parties agreed to commit questions of enforceability or arbitrability to the arbitrator. *Rent-A-Center*, 561 U.S. at 70.

### III. DISCUSSION

Under California law, a valid contract is created where (1) the parties are capable of contracting, (2) the parties mutually assent to contract formation, (3) the agreement has a lawful object, and (4) the agreement is supported by sufficient cause or consideration. Cal. Civ. Code § 1550. On a motion to compel arbitration, the moving party meets its initial burden by simply attaching a copy of the agreement bearing the opposing party's electronic signature, as Defendants have done here. *See, e.g.*, *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016). The burden of establishing electronic acceptance of a contract is not great. *Ruiz v. Moss Bros. Auto Grp.*, 232 Cal. App. 4th 836, 844 (2014). California law provides by statute that authenticating an electronic signature or electronic acceptance "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Cal. Civ. Code § 1633.9.

There is no dispute that the parties were capable of contract formation, that arbitration is a lawful object, and that there was sufficient consideration: Mr. Nuriyev's primary argument appears to be that there was no mutual assent, urging that "Defendants have produced no Plaintiff-specific evidence—no signed agreement, no authenticated acceptance log, and no verifiable metadata linking Plaintiff to any alleged assent." Opp. at 10. Such evidence, however, is not required as a matter of California contract law: Defendants have provided a sworn declaration confirming that Mr. Nuriyev's unique username and unique password (to which nobody else had access) were used to accept the PAA twice. *See Nanavatti v. Adecco USA, Inc.*, 99 F. Supp. 3d 1072, 1079 (N.D. Cal. 2016) ("In the absence of evidence raising any doubts as to the provenance of the electronic signature on the Agreement, the detailed [movant's] declaration easily satisfies Defendant's low burden to authenticate Plaintiff's electronic signature and establish the existence of a valid arbitration agreement."). Mr. Nuriyev's own declaration admits that he "completed all steps on Uber's and Checkr's platforms," Compl. at 11, which, as discussed above, requires acceptance of the PAA, *see* Liao Decl. ¶¶ 6–10.

Mr. Nuriyev nonetheless seeks to avoid enforcement of the Arbitration Provision, urging that Defendants have failed to demonstrate the existence of a valid agreement. Opp. 5–7. To the extent that Mr. Nuriyev argues that remaining silent with respect to a provision permitting him to opt out of the Arbitration Provision within 30 days does not constitute assent, *see* Opp. at 5, he is mistaken. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2024) (affirming enforcement of an arbitration provision because the plaintiff did not opt out within the 30-day period). Similarly, the mere fact that Defendants have not shown that Mr. Nuriyev read or understood the PAA is irrelevant. *See, e.g.*, *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002). In any case, the Ninth Circuit has previously instructed that providing clear notice to a prospective user to read an agreement, providing a hyperlink, and requiring the user to input their assent to the agreement constitute sufficient notice to create an enforceable contract. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476–77 (9th Cir. 2024). There is no dispute that, to sign up to be a driver for Uber, Mr. Nuriyev had to twice confirm his agreement to the terms of the PAA, which were made available to him through hyperlink at the signup stage.

Mr. Nuriyev also appears to argue that he could not have accepted the PAA before passing the Checkr background check. *See* Opp. at 13. This claim is belied by the record. Defendants have submitted authenticated records documenting the exact dates and times he signed the PAA by clicking the "Yes, I Agree" button. Liao Decl. Exs. 4–5. The Court is not required to credit Mr. Nuriyev's conclusory, unsubstantiated assertions that his failed background check precludes his having signed the contract in light of Defendants providing authenticated electronic verification of his assent to the PAA.

Having determined that Defendants have met their burden of demonstrating the existence of an enforceable arbitration provision, the Court turns to the issue whether the parties have clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The Court agrees with Defendants that the Arbitration Provision contains a clear, unmistakable delegation clause stating that an arbitrator shall have the authority to resolve disputes about the arbitrability of any claim. *See* PAA § 13.1(b) ("[S]uch disputes include without limitation disputes arising out of or relating to the interpretation, application, formation, scope, *enforceability, waiver, applicability, revocability or validity of this Arbitration Provision* or any portion of this Arbitration provision." (emphasis added)). Moreover, the PAA expressly incorporates the ADR rules "[f]or claims involving use of the Platform and Driver App in California." PAA § 13.3(a). Incorporation of the rules by reference "constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick*, 93 F.4th at 481. Mr. Nuriyev argues that the delegation clause does not override the formation requirement, Opp. at 10, the Court agrees, but, as discussed above, the Court finds that Defendants have sufficiently shown that the parties entered the PAA.

The Court must enforce the Arbitration Provision, which clearly encompasses the dispute between Mr. Nuriyev and Defendants. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Mr. Nuriyev nonetheless argues that Defendants waived enforcement of the Arbitration Provision by "litigat[ing] actively for months—including removal to federal court, filing detailed Answers with dozens of affirmative defenses, and delaying nearly two months before mentioning arbitration." Opp. at 10–11. Defendants did not waive the argument, as they

preserved their right to compel arbitration in their state court answers and in the Notice of Removal. *See* Notice of Removal ¶ 16, ECF 1; ECF 1-1 Ex. C at 1, Ex. D at 8. Nor does their behavior evidence waiver. *See Dardashty v. Hyundai Motor Am.*, 745 F. Supp. 3d 986, 999 (C.D. Cal. 2024) ("Typically, a party waives their right to arbitrate when they have waited years, not months, to request arbitration. . . . [I]t is 'well-established' that removing a case from state to federal court does not constitute waiver." (internal citation omitted)).

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Motion to Compel Arbitration is GRANTED.

(2) The arbitration proceedings SHALL be commenced within 60 days of the date of this order. Defendant SHALL submit a status report on commencement of arbitration no later than December 5, 2025.

(3) All court proceedings are STAYED pending a final disposition of arbitration.

Dated: October 3, 2025

_____
BETH LABSON FREEMAN
United States District Judge